### R. T. URY v. HOUSTON AND WIFE.

1. After trespass to try title had been brought by plaintiffs against defendant and others, one B., the brother of defendant, gave his own note for the purchase-money of the part of the land which she was sued for, and took the plaintiffs' title bond in the defendant's name, conditioned to make good title to her on payment of B.'s note, and reciting the pendency of the suit, and stipulating that it should be dismissed as against her, and that if plaintiffs should fail to establish by decree of court the grant under which they themselves claimed, and to make good and warranty title to the defendant, then both bond and note to be void, etc. *Held*, that in the absence of proof showing that defendant either authorized, adopted, or ratified this contract between B. and the plaintiffs, or showing that she claimed under the title bond, it was error to hold her thereby to be estopped from setting up adverse title and pleading limitation against the plaintiffs. *Held further*, that without such proof the bond and note were not competent evidence against defendant for any purpose whatever.

2. It was error to permit a deed to be proved by certified copy, without accounting for the original.

3. A copy of a deed, duly certified by a county clerk as a copy from his record of deeds, failed to show any acknowledgment of the original by the makers, or any proof of the execution of the original, but the court below allowed the clerk to be sworn and to prove that the original had been duly acknowledged by the makers, and admitted the copy as evidence. *Held*, error.

4. It was error to admit as evidence an administrator's deed for land, without proof that the maker was administrator, and without proof of confirmation of his sale—the deed not reciting confirmation.

5. That the survey of a colonist's head-right was dated only two days before the closing of the Land Offices, in November, 1835, and that the title issued thereon was dated " the —— day of November, 1835 " (not showing the day of the month), are circumstances which cast .suspicion on the validity of the title, and call for explanation.

APPEAL from Hopkins. Tried below before the Hon. C. T. Garland.

The opinion states the facts of the case.

*Bowers & Walker,* for the appellant. The judgment is in effect a rescission of the contract between Houston and wife and Mrs. Ury.

Is such judgment warranted?

"The party who is guilty of no default, or violation of con-"tract, is alone entitled to rescind it." (Story on Con., Section 978.)

"Generally, where one fails to perform his part of the con-"tract, or disables himself from performing it, the other party "may treat the contract as rescinded; but not if he has been guilty "of a default in his engagement, for he cannot take advantage "of his own wrong to defeat the engagement." (2 Pars. on Con., p. 678.)

"If either a vendor or vendee wish to compel the other to "observe a contract, he immediately makes his part of the con-"tract precedent, for he cannot proceed against the other with-"out an actual performance of the agreement on his part, or a "tender and refusal." (Sug. on Ven., 261.)

In the cases of Browning *v.* Estes (3 and 11 Texas), and other subsequent decisions, the principle is recognized, that it is only upon the disaffirmance of the contract of purchase by the vendee of land, as by demand of the purchase-money and notice of rescission, that his possession becomes tortious as against the vendor. (See also 25 Texas, 137, Scarborough *v.* Arrant.)

Taking these authorities as guide, were Houston and wife in no default? were they able to make a good and valid title?

The words "good and sufficient," in an agreement to convey land, was not satisfied by a warranty deed, "where the grantor "had no title to the land, or where his title was imperfect." * *

"It is familiar law, that the general principles of the con-"tract of sale, both in this country and in England, recognize "and enforce, while it is still executory, the right of the pur-

" chaser to a title clear of defects and incumbrances. This right
" is one, not growing out of the agreement of the parties, but
" which is given by the law, and it naturally follows that a court
" of equity will not decree the specific performance of a con-
" tract, where the title is bad, or even, as it has been said in
" modern times, where it is doubtful.　Hence, when an incum-
" brance exists, which it was not agreed upon should  enter into
" and form part of the consideration, the vendor must discharge
" it before he can call for  a completion of the sale."　(Rawle
on Cov., 655 and 656, 2d ed.)

Houston and wife, at the date of their demand of Mrs. Ury,
had not established the L. P. Dikes title ; they were not able to
convey good valid title; were not ready to tender such title,
and demand specific performance, so as to put Mrs. Ury in de-
fault.

Considering the Dikes title as good, and having no need of
decree of court to establish it, still the plaintiffs had not
obtained partition, and could not convey a marketable title to
the six hundred and forty acres by metes and bounds.　Their
deed would not be valid as against the other co-tenants.

" One tenant in common, cannot convey a distinct portion of
" the estate by metes and bounds, so as to prejudice his co-
" tenants or their assignees."　(4 Kent, 368 ; 24 Texas, 366,
Dorn v. Dunham ; 29 Texas, 364, Trammell v. McDade.)

The demand of Mrs. Ury, and offer to convey, even if it
had been made in the terms of the bond of plaintiffs, did not
put her in default so as to authorize them to rescind.

But the offer was not in the terms, or of such title as they
had promised, being only of deed with special warranty.

But the plaintiffs had chosen to enforce their claim for the
purchase-money against Blythe.　It appears from the state-
ment of facts, that the note was produced from the records of a
suit pending thereon by Houston and wife v. Blythe.　This
suit appears to have been pending in October, 1869, nearly a
year after the notice to Mrs. Ury.　This proceeding on the
note is a waiver of the right to rescind, and the contract should

have been regarded in its terms by the court, if proven; that is, a breach being claimed and disproved by the testimony, the penalty for such breach should not have been allowed.

The testimony is not satisfactory, that Mrs. Ury had anything to do with the bond and note. It appears that the purchase was made by Blythe, giving his own note for the purchase-money, and taking the bond in defendant's name. Had Blythe paid the money, the equitable right in the title conveyed by Houston and wife would have been in him (Blythe). And he should have been notified of the motion and proceedings had in October, 1869, to oust Mrs. Ury. And the demand and tender of performance under the bond should have been made to him, and his refusal alone, and that too when the vendors were not in default, could have authorized the rescission of the contract, and the consequent proceedings under such rescission.

The defendant asked the court to instruct the jury that the acts of Blythe, without her ratification, were not binding on her in absence of authority. The court seemed to assume the fact of the agency, both in his rulings in striking out the former pleadings of the defendant, and in the instructions to the jury.

We conclude therefore, first, That if the bond and note were the act of Mrs. Ury with plaintiffs, yet that they, being in default, and she not, the contract remained in force, and the facts did not authorize the judgment against her.

Second, If the defendant was in default on the demand proven, that the plaintiffs waived their rights to rescind; and third, That if the contract was not Mrs. Ury's, but with Blythe, then plaint·iffs, having sued on the note, cannot claim at the same time a forfeiture; in any event the court's action was erroneous.

Aside from the transaction between the parties subsequent to suit, can the judgment be sustained?

The petition alleged at times joint ownership, and at times (in some of the many amendments) that C. M. Houston owned part, and Nancy Houston a part of the lands.

The testimony, if proving title at all, showed deeds to C. M. Houston for the half the original interest claimed (of eleven

hundred and ninety-five acres), and for the interests subsequently purchased of two of the three children of Dikes, and to his wife Nancy for the remaining half of the original interest. None of the deeds purported to convey for any separate use, or on account of separate estate of either party, or for use of the parties jointly—the legal effect of the several deeds being to make the entire property the community property of Houston and wife. It is insisted that the statement of plaintiffs' case and the verdict of the jury and judgment could be supported only upon proof of a joint estate, and not of community property, the husband alone could sue for community property, and the joinder of the two in original petition, and the estate claimed therein, was a joint tenancy. This would not be supported by the evidence of deeds to a husband for part, and the wife for part. (See 30 Texas, 104, Hackett v. Conner; Ib. 164, Holloway v. Holloway.)

The copy of deed from Stovall and wife to Sparks and McKnight, a necessary link in the testimony (for the eleven hundred and ninety-five acres in original petition), was admitted over objections, when the copy exhibited did not show that the deed had been acknowledged for record; the court permitting the county clerk to bring the record book into court, and testify from it and his memory, not as to contents of the deed, but to effect that the original had been duly acknowledged for record. It is insisted that when parties resort to the statutory method of proving copies, that the provisions of the statutes should be followed. (See 26 Texas, 193, Holliday v. Cromwell; Paschal's Digest, 3713.) The original of the conveyance from Mrs. Stovall was not accounted for, the pre-requisite to secondary testimony of any kind. So of the copies described in the sixth Bill of Exceptions; deed from Gunter to Conner, and from Conner to Lilly, et al., necessary links in plaintiffs' case. Absence of originals not accounted for, nor filing for three days, with notice as prescribed. (Paschal's Digest, 3716.)

The deed from McDonough, administrator of Lilly, to Bagby, was objected to, because no order of sale or of confirmation

shown. The deed was admitted, and the jury by instructions told, "Respecting the deed of McDonough, administrator of "Lilly, the court instructs the jury that the acts of the said "administrator are presumed to be legal, and the deed of "the administrator to be taken as valid, unless impugned by "proof." The statute making such deeds *prima facie* evidence of title, apply to deeds which recite the orders of sale and of confirmation. Here no confirmation is recited, and it is only *prima facie* evidence of it when recited. (Paschal's Digest, 1327.)

No brief for the appellees.

WALKER, J. The plaintiffs in this action below brought an action in the April term, 1859, in the District Court, against Mrs. R. T. Ury, Eli Townsend, and others. The plaintiffs claim under a grant made to Lovick P. Dikes, in 1835. At the commencement of the suit the plaintiffs set up claim to eleven hundred and ninety-five acres of the Dikes grant, through Mrs. Dikes, and two shares of four hundred and fifty-six acres each, purchased from two of the heirs.

At the November term, 1867, Mrs. Ury and Townsend each filed pleas setting up the statute of ten years' limitation, each acknowledging possession of and claiming six hundred and forty acres of the Dikes grant.

The plaintiffs replied to Mrs. Ury's plea that W. T. Blythe had purchased from them the six hundred and forty acres claimed by her, for her use; that she claimed title under them, and was in law estopped from denying their title; that the land claimed by her is the land sold to Blythe for her use; and that the same covers her improvements and is her homestead. They further aver that they have made a title bond to her for the land, taking the note of Blythe for the purchase-money. And by an amendment to their petition, filed on the 2d of November, C. M. Houston claims to be the owner of one-half of the Dikes grant. He avers a sale to Mrs. Ury of six hundred and

forty acres, and asks no judgment against her. The action is dismissed as to all the defendants on the land, and the cause is continued for partition.

At the November term, 1868, the plaintiffs filed an amended petition, alleging that they were the owners of two thousand eight hundred and fifteen acres of the Dikes grant, and that one Garretson, who was a non-resident, owned eleven hundred and seven acres. They prayed for citation against him, and demanded partition.

At the October term, 1869, the plaintiffs moved for judgment against Mrs. Ury, and that her plea of limitation be stricken out. Mrs. Ury had demurred to the petition; the court overruled her demurrer, and entered an order striking out the pleas of general denial, not guilty, and ten years' limitation filed by her.

On the day following this order, Mrs. Ury filed substantially the same pleas, which were again excepted to, but the exception was overruled. On the same day, the cause was tried to a jury, who returned their verdict for the plaintiffs, for two thousand eight hundred and fifteen acres of the land; the judgment was against Mrs. Ury, and in favor of the plaintiffs, for the six hundred and forty acres claimed by her. Commissioners were appointed to make the partition, and a writ of possession was awarded.

It is shown by the statement of facts that the plaintiffs read in evidence the Dikes title, which bears date November, 1835; the day of the month is not given, though the survey is dated on the 11th of the same month and year. They also read in evidence deeds from Mrs. Dikes and two of her children for two thousand and ninety-eight acres of the land, in the aggregate, and they show no title for any more than this amount, though by the verdict and judgment of the court they recover two thousand eight hundred and fifteen acres. One-half of Mrs. Dikes's interest was conveyed to Mrs. Nancy Houston, and the other half to her husband, C. M. Houston. The title bond from plaintiffs, dated August 4th, 1859, was read in evidence, and in connection with the bond the note given by

Blythe, of the same date with the bond, for two thousand dollars. This bond recites the commencement of the suit in Hopkins county, against Mrs. Ury and others, settlers on the Dikes league and labor; that the suit was commenced by the plaintiffs to establish a perfect title; that the suit as to Mrs. Ury is to be dismissed; and covenants that if Houston and wife shall establish by a decree of the court, or other proper tribunal, the Dikes title, they are then to make a good and warranty title to six hundred and forty acres of the land, to Mrs. Ury; but upon their failure to establish such title, both the bond and the note were to be null and void; and the bond recites that Mrs. Ury is not to interfere to postpone or delay the plaintiffs in their efforts to make a title to the Dikes grant. The bond is signed by C. M. and Nancy Houston alone, and the note is signed by W. T. Blythe alone, and the note also recites a part of the condition of the bond, specifying that it is the consideration for six hundred and forty acres of land, sold to Mrs. Romina T. Ury by Houston and wife, and the note by its terms is not to become due until the Houstons are able to make a good and valid title to the land.

On the 7th day of November, 1868, the Houstons served on Blythe and Mrs. Ury a notice to the effect that they were ready and willing to convey, by deed of special warranty, the six hundred and forty acres of land of the Dikes grant described in the bond of August 4th, 1859. There was evidence to prove that Dikes left a widow and three children, who were living in 1865. Mrs. Ury proved, by Daniel Jordan, that he lived as a renter on her place, and was also her agent, prior to the year 1857 or 1858, about 1855. When he first went to live upon the place, there were sixty acres of land improved, with some old cabins upon it.

There are numerous exceptions to the ruling of the court, some of which we deem it immaterial to notice. We think there was error in striking out the pleas of the defendant. She was not estopped from setting up title to the land, other than through the plaintiffs, unless it was clearly shown that she was

claiming under the title bond of August 4th, 1859; that she had authorized the purchase by Blythe, or had adopted and approbated it after its execution.

There was error in admitting in evidence the certified copy of the deed from Stovall and wife, without accounting for the original, nor showing that the original had been proved for record.

There was error in admitting the deed from McDonough, as the administrator of Lilly, to E. M. Bagby, as it was not shown that McDonough was such administrator; and without an order of court showing the confirmation of the sale, the deed not reciting it.

It was error to admit the title bond and note of August 4th, 1859, it not having been first shown that Mrs. Ury had adopted the acts of Blythe, or had authorized him to act for her in the premises.

It was error to admit certified copies of the deeds in evidence, the originals not being accounted for, nor the proper notice of filing the same given.

It is questionable whether the original title to Dikes should have been admitted in evidence without some explanation of the want of a proper date having been first given. The survey being dated on the 11th of November, 1835, and the Land Offices having been closed only two days afterwards, and the title having no date of the day of the month, are circumstances which would require some explanation to free the title from grave suspicion.

Notwithstanding the notice served upon Mrs. Ury and her brother, W. T. Blythe, that they were ready and willing to make a deed with " *special* " covenant of warranty, this notice will avail them nothing. Mrs. Ury, upon the supposition that she was a party equitably bound by Blythe's contract, was under no obligation to accept such a deed. The bond called for a deed of general warranty, and the Houstons did not propose to make such a deed; nor does it appear from the record that they have ever tendered such a deed, and this may be the result of a knowledge on their part that the Dikes title is materially defi-

cient. The effect of the judgment in this case is to disaffirm the contract between Blythe and the Houstons, and in this the judgment is erroneous.

The Houstons have never been in a situation to put Mrs. Ury in default, and there are three reasons prominently disclosed by this record why they should not be allowed to have this contract canceled, if it were true that Mrs. Ury is claiming under it; and if she is not claiming under it, and should not be found legally nor equitably bound to claim under it, it was error to rule out her pleas.

*First.* They have made their election to affirm the contract, and enforce specific performance, by bringing their suit *in personam* against Blythe, on the note.

*Second.* It is shown that the plaintiffs were unable to convey any part of the Dikes grant by metes and bounds; they being at best but tenants in common in the land.

*Third.* They have never tendered such a deed as their bond to Blythe called for.

They did not ask in this proceeding the rescission of the Blythe contract, nor could they ask it in a court of equity, they being to all intents and purposes the defaulting parties.

The looseness and irregularity of this whole proceeding is again manifested by the verdict and judgment giving the plaintiffs upward of seven hundred acres more land than they have shown any title to.

The judgment of the District Court must be reversed, and the cause remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.